## The accounting in JAMES DALY's Estate.

RESPONSIBILITY for a devastavit.

    T. A. PADDOCK, *for the Executors of Ellen Daly.*
    T. J. GLOVER, *for the Administrator.*

THE SURROGATE. The intestate died in 1855, leaving his mother, Ellen Daly, his next of kin. Three or four days after his death, and before the appointment of Degrasse B. Fowler as administrator, she gave Mr. Fowler $590.50, in money, saying it was property of the intestate, and that she wished it kept by him for her, also several memoranda and memorandum books of his accounts, building association certificates, and savings bank books. Subsequently, letters of administration were granted to Ellen Daly and Degrasse B. Fowler.

The administrator was at that time a merchant in good standing, and, with the assent of Mrs. Daly, he took the administration of the estate and converted it into cash. He never made any investment of the funds remaining after payment of the debts, but loaned the moneys to the firm of F. & D. Fowler, of which he was a member, and

they were lost by the failure of that firm in 1860. It does not appear that Mrs. Daly ever acted or interfered with the administration of the estate, or that she knew of the disposition he had made of the funds, or gave any assent to his using them in the manner he did. It appears that she at various times made application to the administrator to settle up the estate, which he promised but neglected to do. On being called to account by the representatives of Mrs. Daly, who is now deceased (having died in 1860), the surviving administrator claims that, as Mrs. Daly handed over the assets to him just prior to his obtaining letters of administration, she should be adjudged to have effected or contributed towards the devastavit of the estate, and that he cannot be required to account to her or those claiming through her.

If this rule might apply as between an administrator and a *bona fide* creditor, surely no such application is to be made when an administratrix is the only next of kin. The administrator cannot be permitted to say that, as the next of kin was so confiding as to trust in his honesty and prudence, she ought to bear the loss without calling him to account.

The principle that where an administrator, who has the actual control or possession of assets belonging to the estate, hands over such assets to a co-administrator, the former shall be answerable for their subsequent loss, applies where there are creditors sustaining loss by any waste of the assets. But such a rule cannot prevail if there has been any good reason why such assets should have left the custody of the one representative of the estate, and have passed into that of the other. Neither can an administrator contend that an administratrix who has confided in his fidelity, shall be answerable for the funds intrusted by her to him, under the circumstances developed in this case, and which funds of right appear to belong solely to her. There was every reason why she should have confided in Mr. Fowler. By his busi-

ness standing and experience, he was more capable of having control of the estate; he was a merchant, and deemed reliable and responsible. Mrs. Daly had no reason to apprehend that her estate would be lost through him, and she was perfectly justifiable in intrusting the funds and the management to him. He voluntarily assumed the management, received the assets, and must render an account of them in the usual form. For its preparation I shall allow such time as may be reasonable.